IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HOMEVESTORS OF AMERICA, INC., § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | No. 3:12-CV-01850-P |
| § | | |
| DUANE LEGATE AND § | | |
| HOUSE BUYER NETWORK, INC., § | | JURY TRIAL DEMANDED |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiff HomeVestors of America, Inc.'s ("HomeVestors") Motion to Compel (Doc. # 25), Defendant Home Buyer Network, Inc.'s ("HBN") Response thereto, and HomeVestors' Reply (Doc. # 37). Having considered the foregoing, the Court finds and concludes as follows:

**I. BACKGROUND**

HomeVestors sued Defendants Duane LeGate ("LeGate") and HBN alleging, *inter alia*, trademark infringement and unfair competition. *See generally*, Amended Complaint (Doc. # 21). LeGate and HBN counterclaimed against HomeVestors, alleging similar claims of trademark infringement and unfair competition. Answer to Amended Complaint at 13-17, ¶¶ 15-37 (Doc. # 23). HomeVestors is known as the WE BUY UGLY HOUSES® people, and has been franchising its business since 1996. Amended Complaint at 4, ¶¶ 8-9. Succinctly stated, HomeVestors alleges that Defendants LeGate and HBN purchased keyword advertising containing HomeVestors Registered Marks, and used said marks to advertise the HBN website, housebuyersnetwork.com. *See Id*. at 7-8, ¶¶ 19-21. HBN purchases properties throughout the United States and Canada, and uses the marks HOUSE BUYER NETWORK and CASHOFFERS.COM ("the HBN Marks") in connection with

its business. Answer to Amended Complaint at ¶¶ 5, 16. By way of counterclaim, Defendants LeGate and HBN allege that HomeVestors has used and continues to use the HBN Marks in connection with HomeVestors' business. *See Id*. at 14, ¶ 17.

On September 4, 2012, HomeVestors served HBN with consolidated discovery requests. On October 3, 2012, HBN served HomeVestors with its responses and objections to HomeVestors' consolidated discovery requests. The Court entered a Protective Order on October 12, 2012, which applies to "all information, documents, and things . . . which are subject to discovery in this action, including . . . documents and tangible items . . . ." Protective Order (Doc. # 16). The present dispute arises from HBN's refusal to produce: (1) documents evidencing HBN's communications with third-parties regarding Internet keyword advertising; and (2) certain financial information. The Court now recounts the parties' arguments supporting and opposing HomeVestors' Motion to Compel.

**A.** *HBN's Third-Party Communications Regarding Internet Keyword Advertising*

The Court first summarizes the parties' arguments with respect to Consolidated Request No. 11 ("Request No. 11"). Therein, HomeVestors asked HBN to produce the following:

> [A]ll documents or communications between You and any third parties relating to Your efforts to advertise the HBN Website through Internet Keyword Advertisers from 2006 to present, including communications discussing advertising strategy, advertising budgets, advertising text or copy, advertising success or failure, advertising analytics, Plaintiff or its franchisees, the Ugly Houses Marks, and advertising clicks or "impressions."

Def.'s Supp. App. at 10. HBN objects to Request No. 11 on grounds that it is "overly broad, unduly burdensome, and not properly limited as to time and scope." *Id.* In addition, HBN objects "since [the request] seeks the disclosure of proprietary and confidential information without a proper protective order being in place." *Id.* Subject to and without waiving the foregoing objections, HBN has agreed

to produce responsive, non-privileged documents "*related to the Ugly Houses Marks*, . . . at a time and place mutually agreeable to all parties after an appropriate protective order has been entered." *Id.* at 10-11 (emphasis added).

HomeVestors argues that it is entitled to the documents responsive to Request No. 11, because said request is limited to relevant subject matter within a reasonable period of time, and as such, it is narrowly tailored to lead to the discovery of admissible evidence. Pl.'s Br. at 16-17. HBN counters, arguing that Request No. 11 is overly broad as to time and scope, because it seeks communications "dating back 7 years, even though HomeVestors claims only appear to date back to 2010" and is not properly limited to information regarding alleged keywords or the trademark at issue. Def.'s Resp. at 5. HBN contends that "HomeVestors has shown no entitlement to this broad range of proprietary and irrelevant information . . . ." *Id.* In any case, HBN avers that an order compelling it to identify and produce the documents and communications in question would be unduly burdensome.[1] *Id.*

HomeVestors replies that HBN has "promised on multiple occasions and in multiple ways" to produce the requested documents, but has yet to do so. Pl.'s Reply at 2. Moreover, HomeVestors calls attention to the fact that HBN previously informed the Court that "HomeVestors' Motion To Compel with respect to Request No. 11 likely will be moot before the motion is heard . . . ." Pl.'s Reply at 2; Def.'s Resp. at 6. As a result, HomeVestors maintains that HBN is willfully obstructing and delaying discovery, and requests that the Court order HBN to produce the documents responsive

---

[1] HBN originally claimed that "to the extent further communications exist, they are on an outdated, out-of-use computer, buried among as many as 10,000 or more irrelevant communications." As such, HBN contended that, in light of the burden and expense associated with retrieving electronically stored documents, "HBN would be required to hire an outside party to perform the task, assuming that it could be performed."

to Request No. 11 without further delay.[2] Pl.'s Reply at 3.

## B. *HBN's Financial Statements*

The Court next summarizes the parties' arguments concerning Consolidated Request No. 77 ("Request No. 77), wherein HomeVestors asked HBN to produce "all documents sufficient to show Your revenues, expenses, net worth, and profits from 2006 to present, including but not limited to financial statements, profit and loss statements, accounting statements, and tax returns." Def.'s Supp. App. at 40-41. HBN objects to Request No. 77 on the grounds that it is "overly broad, unduly burdensome, and not properly limited as to time and scope." *Id.* at 41. In addition, HBN challenges Request No. 77 on the basis that it "seeks the disclosure of proprietary and confidential information without a proper protective order being in place." *Id.* Subject to and without waiving the foregoing objections, HBN has agreed to produce responsive, non-privileged documents "indicating revenues *attributable to use, if any, of the Ugly Houses Marks*, . . . at a time and place mutually agreeable to all parties after the entry of an appropriate protective order." *Id.* (emphasis added).

HomeVestors argues that HBN's financial information is needed in order to prepare a damages model in connection with its claims of trademark infringement and unfair competition. Pl.'s Br. at 21. HomeVestors supports its contention as follows:

---

[2] The Court notes that HomeVestors agreed to retain a third-party vendor to search for relevant third-party communications on HBN's "outdated, out-of-use computer," and offered a list of proposed search terms. Pl.'s Reply at 2; Pl.'s Supp. App. at 62-63. However, by email, HBN informed HomeVestors that it was "able to have a technician transfer these e-mails to a much faster machine." Pl.'s Reply at 3; Pl.'s Supp. App. at 61. As a result, HBN stated it would search for responsive documents without the need of HomeVestors' third-party vendor and confirmed that it would provide HomeVestors with the documents "within a week or two" of March 5, 2013. *Id.* In addition, HBN confirmed that it intended to use HomeVestors proposed search terms and "possibly others," but "[s]ubject to [HBN's] objections." Pl.'s Supp. App. at 61.

> Specifically, HomeVestors must develop a model or formula that will measure with reasonable certainty the revenues HBN has received due to its illegal use of the HomeVestors Registered Marks in connection with HBN's Internet advertising. In order to prepare such a model or formula, HomeVestors and its experts will need to compare, among other things, HBN's various advertising expenditures and its revenues earned over a period of years to ascertain the statistically relevant relationships between these and other variables.

*Id.* HBN counters, claiming Request No. 77 improperly seeks an "extremely broad range of documents," irrespective of HomeVestors agreement to narrow its request to HBN's balance sheets and profit and loss statements from 2010 to 2012. Def.'s Resp. at 6. Moreover, HBN contends that HomeVestors request for such financial information is irrelevant and "highlights the fact that this suit is nothing more than an effort by HomeVestors to gain competitive intelligence about HBN." *Id*. Although HomeVestors proffers that such documents are necessary for its expert to properly calculate damages, HBN submits that "even the most creative damages expert would not competently connect HBN's overall revenues" to HomeVesters' allegations of trademark infringement. *Id*. at 7. As such, HBN has produced only documents identifying keyword advertisements purchased, amounts paid for said advertisements, and the number of "clicks" received therefor.[3] *Id.* at 8.

In reply, HomeVestors argues that, although the financial information is not proof *per se* of the revenue attributable to HBN's illegal use of HomeVestors' trademarks, it is nonetheless relevant to the determination of a reasonable estimate thereof. Pl.'s Reply at 5. HomeVestors contends that, at the very least, HBN's financial information will likely "enable HomeVestors and its expert to

---

[3] HBN justifies its limited production of documents with respect to Request No. 77 on the assumption that "[t]his is the only type of responsive financial information that could be relevant to this dispute."

develop and pose more specific inquiries to HBN to obtain additional admissible evidence" that can be used to calculate HomeVestors' damages. *Id.* In addition, HomeVestors claims that it is entitled to obtain discovery detailing HBN's revenues and expenses in light of HBN's counterclaim seeking, in part, damages for lost profits. *Id*. at 6. Accordingly, HomeVestors argues that HBN's revenues and expenses are necessary in order for it to prepare an adequate defense.[4] *Id*.

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 26(b) allows a party to procure discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" FED. R. CIV. P. 26(b)(1). The information and materials sought need not be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* If a party fails to cooperate in discovery or otherwise furnishes an evasive or incomplete response, any other party may move to compel the discovery response. FED. R. CIV. P. 37(a). Once the moving party establishes that the information and materials sought are within the scope of permissible discovery, the burden shifts to the nonmovant to articulate how the discovery is irrelevant, overly broad, unduly burdensome, or should not be permitted. *See Nickell v. Flight Options, LLC,* No. 3-10-CV-1323-D, 2010 WL 3784497, at *2 (N.D. Tex. Sep. 27, 2010); *Spiegelberg Mfg., Inc. v. Hancock*, No. 3:07-CV-1314-G, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007).

## III. DISCUSSION

### A. *HomeVestors' Entitlement to HBN's Third-Party Communications*

The Court concludes that, to the extent they are not moot, HBN's objections must be

---

[4] The Court notes that HomeVestors produced, without hesitation, its financial documents in response to HBN's request for production. Pl.'s Reply at 7.

overruled. The Court initially finds that Request No. 11 is reasonably specific and likely to lead to the discovery of admissible evidence relevant to HomeVestors' claims of trademark infringement. Nevertheless, HBN has agreed to produce the documents responsive to Request No. 11. *See* Pl.'s Supp. App. at 61. In addition, HBN has confirmed its intention to use HomeVestors' proposed search terms and "possibly others." *Id*. As HBN has failed to timely produce the responsive documents, it must now comply with HomeVestors' request. Accordingly, HomeVestors' Motion to Compel is granted as to Request No. 11.

### B. *HomeVestors' Entitlement to HBN's Financial Statements*

After due consideration, the Court concludes that HBN's objections to Request No. 77 must be overruled. HBN's mere assertion that Request No. 77 is overly broad because it seeks an "extremely broad range of documents" is inadequate to articulate an effective objection. *See Mcleod, Alexander, Powell & Apfell, P.C. v. Quarks*, 894 F.2d 1482, 1485 (5th Cir. 1990); *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("Broad-based, non-specific objections . . . fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request."). Bearing in mind the broad and liberal construction afforded the federal rules of discovery, HBN must articulate specifically how Request No. 77 is overly broad. *McLeod, Alexander, Powell & Apfell*, 894 F.2d at 1485. HBN has failed to make such a showing. To the contrary, HomeVestors' request for HBN's balance sheets and profit and loss statements from 2010 to 2012 is reasonably specific. Accordingly, HBN's boilerplate objection is overruled.

The Court further determines that HBN's objection that Request No. 77 is irrelevant is likewise inadequate. To support its contention that HBN's revenues could not be relevant to the issue of HomeVestors' alleged trademark infringement, HBN cites the *Drywall Systems Int'l* case out of

the District of Oregon, in which the court declined to order production of *all* of the defendant's financial statements and tax returns on the basis that such a request was not sufficiently specific enough to be relevant to the plaintiff's calculation of damages. Def.'s Resp. at 7-8; *See Drywall Sys. Int'l, Inc. v. Polyform, Inc.*, No. Civ.04-6230-HO, 2005 WL 758257, at *2 (D. Or. Mar. 31, 2005)) (emphasis added). Here, HomeVestors is not seeking *all* of HBN's financial statements and tax returns; rather, HomeVestors is requesting a specific category of financial data: HBN's balance sheets and profit and loss statements from 2010 to 2012. The Court finds that this information is relevant to HomeVestors' calculation of damages. *See Bouaziz v. AZT Corporation*, No. 3-10-CV-0053-B, 2010 WL 5300838, at *2 (N.D. Tex. Dec. 23, 2010) (recognizing that financial information may be relevant to the issue of damages and lost profits); *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 137 (E.D. Tex. 2003) (evidence of defendant's financial worth material and relevant to help plaintiffs calculate damages model for treble damages claim). For instance, such information may be relevant to HomeVestors' estimate of the revenue attained by HBN in connection with its alleged improper use of HomeVestors' trademarks. HBN's financial information may also be relevant in the event that HBN offers evidence of its business expenses at trial in order to reduce its liability to HomeVestors. Moreover, the Court finds that HomeVestors' request is relevant to HBN's allegations of lost profits as well. By way of its counterclaim for damages against HomeVestors, seeking in part "the loss of sales and profits that HBN would have made but for HomeVestors' acts," HBN put its financial picture in controversy, as it bears directly on the issue of damages. Answer to Amended Complaint at 15, ¶ 27; *Continental Coal, Inc. v. Cunningham*, No. 06-2122-KHV, 2007 WL 4241848, at *3 (ordering plaintiff to produce tax returns because plaintiff put income at issue by seeking compensatory damages). The Court will not allow

HBN to make a claim for lost profits while refusing to produce information to support such an assertion. Therefore, HBN's objection that HomeVestors' requested financial information is irrelevant is overruled.

In light of the foregoing, the Court concludes that HomeVestors' Motion to Compel is granted as to Request No. 77. The Court is mindful that sensitive information may be contained in HBN's balance sheets and profit and loss statements. Therefore, the Court orders that all financial documents produced by HBN shall be treated as confidential information and governed by the Protective Order entered by this Court on October 12, 2012.

### IV. CONCLUSION AND ORDERS

Based on the parties' filings and the applicable law, the Court finds and concludes that HomeVestors' opposed Motion to Compel (Doc. # 25) should be GRANTED. Accordingly, HBN is hereby ORDERED to produce the following documents: (1) communications between HBN and third parties regarding advertisement of the HBN website through Internet keyword advertisers from 2006 to present, to the extent not already produced; and (2) HBN's balance sheets and profit and loss statements from 2010 to 2012. HBN must produce the foregoing documents no later than 14 days from the date of this Order.

**SO ORDERED**, July 3, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE